UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUANG M.,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>KILOLO KIJAKAZI,<br><br>　　　　　Defendant. | Case No. 20-cv-09200-JSC<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 19, 20 |

Plaintiff seeks social security benefits for a combination of physical impairments, including rotator cuff tears in both shoulders, cervicalgia, chronic neck pain, and chronic pain syndrome. (Administrative Record ("AR") 18.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying her benefits claim. Now before the Court are Plaintiff's and Defendant's motions for summary judgment.[1] (Dkt. Nos. 19, 20.) After careful consideration of the parties' briefing, the Court concludes that oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), and GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings. Because the ALJ erred in his weighing of medical evidence and Plaintiff's subjective pain symptom testimony, but there are outstanding issues to be resolved, remand for further proceedings is proper.

**BACKGROUND**

**A. Procedural history**

Plaintiff filed an application for disability benefits under Title II of the Social Security Act

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 10, 11.)

(the "Act") on August 20, 2018, alleging a disability onset of December 24, 2016.[2] (AR 15, 381.) Her application was denied both initially and upon reconsideration. (AR 15, 125-30.) Plaintiff then submitted a request for a hearing before an Administrative Law Judge ("ALJ") which was held in person on October 3, 2019, and telephonically on May 7, 2020. (AR 15.) On June 24, 2020, the ALJ issued a decision finding that Plaintiff has the following severe impairments: right shoulder pain due to post-surgical re-tear of right rotator cuff, right frozen shoulder, impingement, and partial tear of left shoulder rotator cuff due to overuse, cervicalgia, chronic neck strain/sprain, and chronic pain syndrome, but that she does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (AR 18-19.) The ALJ then determined that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b). (AR 19.) In particular, the ALJ found that Plaintiff

> should be able to sit with appropriate breaks for 4-hours during and 8-hour workday. [Plaintiff] can never reach above shoulder level bilaterally. [Plaintiff] can occasionally push, pull, handle, finger, reach laterally, and reach in all directions. [Plaintiff] can never climb ladders, ropes, or scaffolds. [Plaintiff] can frequently climb ramps and stairs, stoop, and crawl.

(*Id.*) In light of the RFC finding, the ALJ concluded that Plaintiff is not disabled because she can perform jobs existing in significant numbers in the national economy. (AR 26-27.)

Plaintiff filed a request for a review of the ALJ's decision, which the Appeals Council denied. (AR 1-3.) Plaintiff then sought review in this Court. (Dkt. No. 1.) In accordance with Civil Local Rule 16-5, the parties filed cross motions for summary judgment. (Dkt. Nos. 19, 20.)

**B. Issues for review**

1. Did the ALJ err in evaluating the medical evidence?

2. Did the ALJ err in evaluating Plaintiff's subjective pain testimony?

3. Did the ALJ err in determining that jobs that Plaintiff could perform existed in significant numbers?

4. Should the Court remand for payment of benefits or further proceedings?

---

[2] Amended from April 6, 2016. (AR 281-82.)

2

**LEGAL STANDARD**

A claimant is considered "disabled" under the Act if she meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that she is unable to do her previous work and cannot, based on her age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's RFC, the claimant can still do his "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), *superseded by regulation on other grounds*; *see* 20 C.F.R. § 404.1520(a).

**DISCUSSION**

**A. Medical Opinion Evidence**

Under Ninth Circuit precedent, courts must "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non[-]examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended (Apr. 9, 1996)). A treating physician's opinion is entitled to more weight than that of an examining physician, and an examining physician's opinion is entitled to more weight than that of a non-examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). If a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991) (internal citations

3

omitted). And "[e]ven if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester*, 81 F.3d at 830 (internal citations omitted). Likewise, "the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31 (internal citations omitted).

For benefits applications filed after March 27, 2017, such as this one, the Social Security Administration's regulations and several Social Security Rulings regarding the evaluation of medical evidence have been amended, including SSR 96-2p ("Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions"). "The new regulations provide that the Commissioner 'will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion.'" *V.W. v. Comm'r of Soc. Sec.*, No. 18-cv-07297-JCS, 2020 WL 1505716, at *13 (N.D. Cal. Mar. 30, 2020) (quoting 20 C.F.R. § 416.920c(a)). "Instead, the Commissioner will evaluate the persuasiveness of all medical opinions based on (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as 'evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements.'" *P.H. v. Saul*, No. 19-CV-04800-VKD, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) (quoting 20 C.F.R. § 404.1520c(a), (c)(1)-(5), § 416.920c(a), (c)(1)-(5)). "The two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that 'form the foundation of the current treating source rule.'" *V.W.*, 2020 WL 1505716 at *13 (quoting Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853). The Commissioner argues that the Court must give deference to these regulations and thus, in evaluating the medical evidence, disregard the Ninth Circuit precedent described above.

Under the "law of the circuit" rule, "a published decision of [the Ninth Circuit] constitutes binding authority which 'must be followed unless and until overruled by a body competent to do so.'" *Gonzalez v. Arizona*, 677 F.3d 383, 389, n.4 (9th Cir. 2012) (en banc), aff'd sub nom. *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013); *see also Baker v. Delta Air*

4

1   *Lines, Inc.*, 6 F.3d 632, 637 (9th Cir. 1993) (holding that Ninth Circuit precedent "loses its binding
2   force when an en banc decision, Supreme Court decision, or subsequent legislation undermine that
3   precedent"). As the Commissioner notes, however, the Ninth Circuit recently held in the social
4   security context that courts must give deference to an agency's reasonable interpretation of
5   amendments to a statute, even if it conflicts with binding circuit precedent. *Lambert v. Saul*, 900
6   F.3d 1266 (9th Cir. 2020).

7   The Ninth Circuit has not yet addressed the effect of the 2017 regulations on benefits
8   applications filed after March 27, 2017, and "[i]t remains to be seen whether the new regulations
9   will meaningfully change how the Ninth Circuit determines the adequacy of an ALJ's reasoning
10  and whether the Ninth Circuit will continue to require that an ALJ provide 'clear and convincing'
11  or 'specific and legitimate reasons' in the analysis of medical opinions, or some variation of those
12  standards." *Joseph Perry B. v. Saul*, No. Sacv 20-1196-KS, 2021 WL 1179277, at *3 (C.D. Cal.
13  Mar. 29, 2021) (internal citation omitted). District courts within the Ninth Circuit have answered
14  the question differently. *See, e.g., Kathleen G. v. Comm'r of Soc. Sec.*, No. C20-461 RSM, 2020
15  WL 6581012, at *3 (W.D. Wash. Nov. 10, 2020) ("[t]his Court is bound by precedent of the Ninth
16  Circuit and may not overrule a decision from that court. The history of the 'clear and convincing'
17  standard indicates it will not likely be altered by the new regulations, as it was based on
18  evidentiary principles in administrative law, and not on a hierarchy of opinions.") (cleaned up);
19  *J.C. v. Kijakazi*, No. 20-CV-06746-TSH, 2021 WL 5744485, at *4 (N.D. Cal. Dec. 2, 2021)
20  (holding that "[g]iven the Ninth Circuit's holding in *Lambert* [*v. Saul*, 980 F.3d 1266, 1268 (9th
21  Cir. 2020)], the Court finds "it must defer to the new regulations, even when they conflict with
22  judicial precedent.").

23  Turning to the medical evidence, Plaintiff challenges the weight the ALJ gave to the
24  following medical opinions: (1) the opinions of Plaintiff's treating and examining medical
25  providers, and (2) the opinions of the consultative examiner and non-examining medical experts.
26  Because the Court concludes that the ALJ erred in his weighing of medical evidence under either
27  the Ninth Circuit precedent or the 2017 regulations, the Court does not decide whether the revised
28  regulations overrule the Ninth Circuit precedent.

5

### 1. Treating and Examining Physicians

From 2013 to 2018, Plaintiff received evaluations of her ability to work from Drs. Campbell, Martinovsky, and Hanley—her treating and examining medical providers—in connection with her workers' compensation case. (AR 548-570, 578-613, 690-705.) These providers all concluded that Plaintiff was limited to not lifting more than five to ten pounds. (AR 558, 581, 695.) The ALJ, however, did not include any lifting restriction in the RFC finding. Instead, he found that the above opinions were of "limited probative relevance" and unpersuasive because: (i) the providers "are not State agency consultants trained in the disability program or its evidentiary requirements," and, (ii) the longitudinal medical record showed normal and stable clinical examinations. (AR 20.) Substantial evidence does not support the ALJ's reasons for discounting the opinions of Drs. Campbell, Martinovsky, and Hanley.

First, that Plaintiff's treating and examining physicians' opinions were not given by State agency consultants is not a valid reason for the ALJ to discount the opinions of treating and examining physicians. If that were the rule, then the Ninth Circuit's entire hierarchy for how the opinions of treating and examining physicians should be treated would have made no sense; an ALJ could have simply relied on State agency consultants without saying more. *See Raymond D. v. Comm'r of Soc. Sec.*, No. 19-cv-07594-TSH, 2020 WL 6342924, at *11 (N.D. Cal. Oct. 29, 2020) (reasoning that "[i]f the [state agency] consultants' knowledge and understanding of the disability programs' requirements were a sufficient reason to give their opinions great weight, then the non-examining state agency consultants would always be entitled to great weight.").

Further, there is nothing in the revised regulations that suggests it is proper to reject treating and examining physicians' opinions merely because they are the plaintiff's treating physicians rather than State agency consultants. To the contrary, while one factor to consider is a medical source's understanding of the disability program's policies and evidentiary requirements, other factors, such as relationship with the claimant and consistency, weigh in favor of the persuasiveness of a treating physician's opinion. 20 C.F.R. §§ 404.1520c(a), (c)(1)-(3), 416.920c(a), (c)(1)-(3). Further, the ALJ did not explain how understanding the program's policies and evidentiary requirements was material to the treating and examining physicians'

6

opinions on Plaintiff's lifting capabilities.  While such understanding might be material to an opinion as to whether a claimant is disabled for purposes of the social security program, it is not self-evident how it matters to a medical judgment regarding how much a patient can safely do.

Second, the ALJ erred in concluding that Drs. Campbell, Martinovsky, and Hanley's opinions were inconsistent with and unsupported by the longitudinal medical record.  (AR 20.)  The ALJ found that Plaintiff's medical records from 2017 through 2020 reflected reliably normal and stable clinical examinations.  (*Id.*)  From 2017 to 2020, Plaintiff visited her medical provider several times (*see* AR 653, 667, 705, 760, 772), yet the ALJ cites only one such record (*see* AR 24 (citing 744-45)).  The ALJ's lone citation describes minimal degenerative changes to Plaintiff's right shoulder and no significant abnormalities of her cervical spine.  (*Id.*)  However, during this same medical visit, the medical provider diagnosed Plaintiff with right shoulder joint pain and right rotator cuff syndrome, and noted that Plaintiff was unable to perform a Hawkins test, kiss-the-elbow test, or drop arm test due to pain.  (AR 735-38.)

Moreover, Plaintiff's medical record is replete with multiple abnormalities in Plaintiff's evaluations.  (*See* AR 682 (note for 10/13/2018: noting positive Spurling's test for left cervical radiculopathy and positive Hawkins and Neer tests for right rotator cuff impingement), AR 698 (note for 5/14/18: noting permanent impairment and abnormal physical examination findings), AR 580 (note for 3/21/18: diagnosing full tear in right shoulder and partial tear in left shoulder, bilateral shoulder pain, cervical radiculopathy, and chronic pain), AR 602 (note for 12/20/17: observing that "lifting is difficult for both shoulders, especially reaching upwards" and noting that pain impairs Plaintiff's ability to sleep), AR 608, 610-11 (note for 10/18/17: describing Plaintiff as avoiding exercise and performance of chores and hobbies, and requiring help to bathe and dress and noting reduced motor strength and range of motion, and a positive Hawkins test).)  The ALJ erred in ignoring the contrary medical evidence and focusing instead on the limited evidence which supported his finding of non-disability.  *Holohan*, 246 F.3d at 1207.

"An ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination."  *Williams v. Colvin*, No. ED CV 14-2146-PLA, 2015 WL 4507174, at *6 (C.D.

Cal. July 23, 2015) (internal citations omitted); *see also Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) ("We conclude that the ALJ's specific reason for rejecting Dr. Hsieh's medical opinion is not supported by substantial evidence.  In concluding that the most recent medical evidence indicates that Holohan was improving, the ALJ selectively relied on some entries in Holohan's records from San Francisco General Hospital and ignored the many others that indicated continued, severe impairment.").  The ALJ failed to make a reasonable disability determination when he relied on a single notation and ignored much of the medical record to find that the treating and examining physicians' opinions, including the limitation on lifting, were not consistent with the longitudinal record.

In sum, the ALJ's rejection of the opinions of Plaintiff's treating and examining physicians was not supported by substantial evidence.

### 2. Consultative Examiner and Non-Examining Medical Expert Opinions

Plaintiff also challenges the ALJ's reliance on the opinions of the consultative examiner and non-examining medical experts Drs. Bayne, Kendrick, and Fuchs.  The ALJ found each of their opinions regarding Plaintiff's functional limitations "persuasive."  (AR 23.)

Consultative examiner Dr. Bayne examined Plaintiff in October 2018 and opined that Plaintiff could perform light work with occasional gripping, grasping, pushing, pulling, and performing left finger, hand, and wrist manipulations; occasional over-the-shoulder reaching with the right arm; and lift and carry 10 pounds frequently and 20 pounds occasionally.  (AR 681, 683.)  Dr. Kendrick testified that Plaintiff was limited to a light range of exertional activity with no overhead reaching and frequent reaching bilaterally.  (AR 38.)  Dr. Fuchs generally agreed with the opinions previously set forth by Dr. Bayne, including that Plaintiff remains capable of only occasional lifting, grabbing pushing, pulling, and performing of left-hand manipulations, at most occasional reaching overhead, and lifting and carrying of up to 10 pounds frequently and 20 pounds occasionally.  (AR 58.)

The ALJ credited these opinions as persuasive for three reasons.  (AR 23.)  First, Drs. Bayne, Kendrick, and Fuchs are State agency consultants trained in the disability program and its evidentiary requirements.  (*Id.*)  Second, Dr. Bayne had the benefit of personally examining the

claimant, Dr. Kendrick has extensive experience evaluating individuals for the purpose of the disability analysis, and Dr. Fuchs had the opportunity to review the entirety of the medical evidence of record. (*Id.*) Last, the ALJ found that their generally shared opinion that Plaintiff remains capable of performing a light range of exertional activity is fully consistent and supported by the record as a whole. (*Id.*)

Plaintiff challenges the ALJ's reliance on these opinions on several fronts. Plaintiff argues that Dr. Bayne based his opinion upon one examination of Plaintiff and without the benefit of MRI scans or x-rays to review. Next, Plaintiff emphasizes that the other medical experts never examined Plaintiff. Plaintiff also argues that none of the opinions by Drs. Bayne, Kendrick, or Fuchs is as well supported by or as consistent with the whole record as those offered by Drs. Campbell, Martinovsky, and Hanley.

An ALJ may rely on a non-examining expert's opinion where that opinion is consistent with other evidence in the record. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *see also Yesipovich v. Colvin*, 166 F. Supp. 3d 1000, 1005-06 (N.D. Cal. Sept. 28, 2015) (implying that medical expert's testimony may be given more weight than to plaintiff's examining physicians if ALJ provides specific and legitimate reasons supported by substantial evidence in the record). However, because the Court has concluded that the ALJ failed to properly consider Drs. Campbell, Martinovsky, and Hanley's opinions of Plaintiff's functional limitations, remand is appropriate to allow the ALJ to reweigh the medical evidence.

## B. The ALJ's Determination of Plaintiff's Credibility

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal citations and quotation marks omitted). Second, "[w]hen an [ALJ] determines that a claimant for Social Security benefits is not malingering and has provided objective medical evidence [], the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

9

specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015). If the ALJ's assessment "is supported by substantial evidence in the record, [courts] may not engage in second-guessing." *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citations omitted).

Here, applying the two-step analysis, the ALJ first determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 20.) Because Plaintiff met the first part of the test, the ALJ was required to provide "specific, clear and convincing reasons" for rejecting Plaintiff's testimony regarding the severity of her symptoms, or else find evidence of malingering. *Brown-Hunter*, 806 F.3d at 488-89. The ALJ found no evidence of malingering, but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (AR 20.) The ALJ provided two reasons for so concluding. First, Plaintiff's treatment was conservative in nature without any sustained use of any prescription medications. (AR 22, 24-25.) Second, Plaintiff was able to perform activities of daily living such as light household chores and driving. (AR 25.)

### 1. Conservative Treatments

The ALJ's finding of Plaintiff's treatment as conservative and limited in nature is not a specific reason supported by clear and convincing evidence for rejecting Plaintiff's subjective pain testimony. Conservative medical treatment can only be used as a basis for discounting a claimant's testimony where the ALJ identifies the more aggressive treatment options that were available and appropriate and considers the reasons the claimant did not pursue more aggressive treatment. *See Orn*, 495 F.3d at 638 ("[A]n adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.") (internal citations and quotation marks omitted); *Cortes v. Colvin*, No. 2:15-CV-2277 (GJS), 2016 WL 1192638, at *4 (C.D. Cal. Mar. 28, 2016) ("[A]n ALJ errs in relying on conservative treatment if the record does not reflect that more aggressive treatment

10

1    options are appropriate or available." (internal citations and quotation marks omitted)).  Here, the
2    ALJ described prescriptions of topical gel, Lidocaine patches, and Gabapentin for pain relief as
3    conservative and routine treatment and noted that Plaintiff derived benefit from acupuncture
4    treatments.  (AR 21, 22.)  The ALJ also noted that Plaintiff had declined a second surgery to repair
5    her re-torn right rotator cuff (AR 24 (citing AR 734)) but did not consider any explanations
6    Plaintiff may have provided, or other information in the case record, for not pursuing surgery.
7    Surgery is an aggressive treatment (*see Stephanie L. v. Saul*, No. CV 18-5467-SP, 2019 WL
8    4749900, at *5 (C.D. Cal. Sept. 27, 2019) (noting that "surgery is unquestionably not mild and
9    conservative")), and its availability cuts two ways.  On the one hand, the availability of surgical
10   treatment hints at the severity of Plaintiff's right rotator cuff tear.  On the other hand, Plaintiff's
11   decision to forego another surgery may suggest that Plaintiff tolerated her impairments.  *See*
12   *Warre v. comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can
13   be controlled effectively with medication are not disabling for the purpose of determining
14   eligibility for SSI benefits").

15   The ALJ's failure to consider any explanations before finding that Plaintiff's treatment was
16   conservative constitutes error.  "[N]o adverse credibility finding is warranted where a claimant has
17   good reason for failing to obtain treatment."  *Lapeirre-Gutt v. Astrue*, 382 F. App'x. 662, 664 (9th
18   Cir. 2010) (citing *Orn*, 495 F.3d at 638).  The ALJ did not inquire at either hearing as to Plaintiff's
19   reasons for refusing surgery.  And the ALJ's decision does not address what reasons Plaintiff may
20   have had for refusing surgery.  This omission is error as the ALJ cannot draw the inference that
21   Plaintiff's testimony lacks credibility for not engaging in more aggressive treatment without first
22   analyzing why Plaintiff did not seek more aggressive treatment.  *See* SSR 16-3p (stating that an
23   ALJ must consider "possible reasons" for conservative treatment and that an ALJ may need to
24   contact the claimant or raise the issue at the hearing); *Eitner v. Saul*, 835 F. App'x 932, 933 (9th
25   Cir. 2021) (citing SSR 16-3pm and stating that failure to pursue more aggressive treatment was
26   not a clearing and convincing reason to reject plaintiff's testimony because the "ALJ failed to
27   consider possible reasons why claimant did not seek or obtain treatment" and the ALJ only asked
28   plaintiff whether he had received treatment, but "the inquiry ended there").  Because the ALJ did

11

1  not consider Plaintiff's reasons for not pursuing a second surgery, the ALJ did not provide a clear
2  and convincing reason supported by substantial evidence for rejecting Plaintiff's subjective pain
3  testimony.

### 2. Activities of Daily Living

The ALJ erred in determining that Plaintiff's ability to perform light household chores and to drive a vehicle undermined Plaintiff's credibility as to the severity and persistency of her chronic pain.  The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.  One does not need to be 'utterly incapacitated' in order to be disabled."  *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).  While Plaintiff's September 2018 exertion questionnaire indicated that Plaintiff does light cleaning, some cooking, and watering the yard (AR 325-26), at her 2019 in-person hearing, Plaintiff testified to being unable to lift 20 pounds to the shoulder level and not able to go grocery shopping (AR 42).  The ALJ found that Plaintiff's ability to perform some light household chores and driving as needed indicates that she is capable of performing a light range of work.  (AR 25.)  However, light household chores and driving are not the type of daily activities that are indicative of Plaintiff's ability to get through a typical workday.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."); *see Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (claimant's ability to cook a meal and do the dishes did not detract from finding a disability).  That Plaintiff can complete some activities such as light cleaning, driving, and watering the yard work does not alone undermine her subjective pain testimony.  *See Vertigan*, 260 F.3d at 1050 (reasserting that a plaintiff's ability to drive a car does not detract from her credibility as to her overall disability); *see also Valenzuela v. Berryhill*, No. 16-CV-2424 W (JMA), 2018 WL 1524496, at *9 (S.D. Cal. Mar. 28, 2018) (concluding that daily activity of watering plants was not inconsistent with plaintiff's allegations and requires physical functions that are not necessarily transferable to the work setting).

Therefore, neither of the reasons given by the ALJ for discounting Plaintiff's testimony meet the specific, clear, and convincing standard, and the ALJ's rejection of Plaintiff's subjective pain testimony was in error.

### C. Harmless Error

Because the ALJ's consideration of the medical evidence and subjective pain testimony are not supported by substantial evidence, the ALJ's decision cannot stand. Given this, the Court need not consider Plaintiff's additional arguments regarding the ALJ's step-five finding. The ALJ's errors here go to the heart of the disability determination and are not harmless. "[A] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). For instance, Dr. Campbell opined that Plaintiff should not lift, push, or pull over five pounds or reach over shoulder height. (AR 558.) Nurse Practitioner Natalya Golovanov, under the supervision of Dr. Martinovsky, noted that Plaintiff was "desperate" and frustrated with her pain symptoms. (AR 578.) Dr. Martinovsky opined that Plaintiff should not lift, carry, push, or pull over 10 pounds and should do no overhead work. (AR 581.) Dr. Hanley provided the same opinion. (AR 693.) Had the ALJ not erred in weighing the medical opinion evidence and determining Plaintiff's credibility, the ALJ could have reasonably come to a different conclusion regarding Plaintiff's physical capacity to work. *See Stout*, 545 F.3d at 1056 (error was not harmless where crediting lay testimony supported a conclusion that the plaintiff's mental impairments would preclude him from returning to gainful employment). Therefore, the ALJ's errors in the weighing of the medical opinion testimony are not harmless, nor are the ALJ's errors with respect to discounting Plaintiff's subjective pain testimony.

### C. Remand for Further Proceedings or Payment of Benefits

Plaintiff asks the Court to remand the case for the payment of benefits or, alternatively, for further proceedings. When courts reverse an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (internal citations omitted). A remand for an award

13

of benefits is proper however, "where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017) (internal citations and quotation marks omitted).

Here, the first prong of the test is not satisfied because the record has not been fully developed. There are outstanding issues that must be resolved before a final determination can be made given the Court's conclusion that the ALJ erred with respect to his weighing of Plaintiff's symptom testimony. The second prong of the test has been satisfied, as discussed above, because the ALJ gave legally insufficient reasons for discounting the medical opinions of Drs. Campbell, Martinovsky, and Hanley as well as Plaintiff's symptom testimony. The third prong, however, is not satisfied. It is not clear from the record that the ALJ would be required to find Plaintiff disabled were the evidence properly credited. When the medical evidence is accorded the weight befitting its source, the ALJ is best positioned to determine a claimant's functional capacity and disability status. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) ("the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not a district court"); *Moy v. Kijazaki*, No. 2:20-cv-01319 AC, 2021 WL 4710945, at *7 (E.D. Cal. Oct. 8, 2021) (reasoning that the ALJ is in the best position to consider disregarded medical records in forming opinion of Plaintiff's stated limitations); *Masterson v. Berryhill*, No. 3-16-cv-01300-GPC-WVG, 2017 WL 357525, at *5 (S.D. Cal. Aug. 18, 2017) (noting that the ALJ is in the best position to resolve evidentiary concerns).

Furthermore, at the telephonic hearing, the vocational expert was asked hypotheticals based only upon Plaintiff's ability to engage in light work. (*See* AR 59, 60, 62-63.) As defined by the Act, "light work" is a physical exertion classification that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). If the ALJ determines that Plaintiff is unable to carry 10 pounds frequently, Plaintiff would be limited to sedentary level work. *See* 20 C.F.R. § 404.1567(a). Considered

14

alongside Plaintiff's age, the ALJ's finding that Plaintiff cannot return to her past relevant work (*see* AR 25), and the vocational expert's testimony that Plaintiff would have no transferable skills (AR 69) would likely result in a finding that Plaintiff is disabled. *See* 20 C.F.R. § 404, Subpart P, Appendix 2, Rule 201.14. Further proceedings are therefore warranted.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

Dated: March 23, 2022

JACQUELINE SCOTT CORLEY
United States Magistrate Judge